## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS

Sheila Renee Dixon                                                               **Plaintiff**

### Cause No. 3: 12-CV-207-JTK

Carolyn W. Colvin, Acting Commissioner,                          **Defendant**
Social Security Administration

## ORDER AFFIRMING THE COMMISSIONER'S DECISION

Sheila Renee Dixon seeks judicial review of the denial of her application for

supplemental security income (SSI). Dixon received SSI as a child. The record suggests she

received SSI due to mental retardation and attention deficit/hyperactivity disorder.[1]

Dixon's child SSI ceased when she turned 18. She then sought adult SSI. Her efforts to

obtain adult SSI involve two applications. The applications were consolidated at the

agency level.

**The Commissioner's decision**. After considering Dixon's applications, the

Commissioner's ALJ determined that although Dixon a had severe impairment —

personality disorder[2] — she could do unskilled work.[3] Because a vocational expert

---

[1]SSA record at p. 200 (SSA childhood disability evaluation form listing mental
retardation and ADHD as symptoms for initial claim).

[2]*Id*. at p. 271.

[3]*Id*. at p. 273 (determining Dixon could work at all exertional levels, except that
she must work where interpersonal contact is incidental to the work performed; the
complexity of tasks is learned by rote, few variables, little judgment; and supervision
required is simple, direct and concrete).

identified work Dixon can do,[4] the ALJ determined Dixon was not disabled under the Social Security Act.[5]

After the Commissioner's Appeals Council denied a request for review, the ALJ's decision became a final decision for judicial review.[6] Dixon filed this case to challenge the decision. In reviewing the decision, the court must determine whether substantial evidence supports the decision and whether the ALJ made a legal error.[7]

**Mental retardation**. Dixon's primary argument is that she meets listing 12.05C.[8] That listing applies to mental retardation. To meet listing 12.05C, Dixon must satisfy all

---

[4]*Id*. at p. 840-41 (identifying kitchen helper, laundry worker, and cafeteria attendant as available jobs).

[5]*Id*. at p. 278.

[6]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating that "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that Commissioner's appeal procedure permits claimants to appeal only final decisions).

[7]*See* 42 U.S.C. § 405(g) (requiring district court to determine whether Commissioner's findings are supported by substantial evidence and whether Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

[8]Docket entry # 13, pp. 11-18.

2

of specified criteria.[9]   Relevant here, meeting the listing requires: "A *valid* verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."[10] Dixon scored below the required range during IQ testing,[11] but the ALJ determined the scores were invalid.[12]

Because no question exists about the presence of "a physical or other mental impairment," the question before the court is whether substantial evidence supports the determination that Dixon's scores were invalid.[13] Substantial evidence exists if a reasonable mind would accept the evidence as adequate to support the determination.[14]

A reasonable mind would accept the opinions of the examining/testing psychologists as adequate to show Dixon's scores were invalid.   The first examiner

---

[9]*Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004); *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

[10]20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05C (italics added).

[11]SSA record at p. 169 (on Jan. 10, 2007, verbal IQ: 57, performance IQ: 54, full scale IQ: 51) & p. 542 (on May 21, 2009: verbal IQ: 53, performance IQ: 54, full scale IQ: 49).

[12]*Id*. at p. 276 (determining scores were invalid due to malingering).

[13]*Clark v. Apfel*, 141 F.3d 1253, 1255 (8th Cir. 1998) ("For purposes of our review, … the question is whether the decision to disregard [IQ] scores as unreliable is supported by substantial evidence on the record as a whole.").

[14] *Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990).

suspected exaggeration and reported that Dixon failed to do her best on IQ testing.[15]  The examiner observed that Dixon scored lower at age 18 than she did at age 10.[16]  The examiner reported that when asked how a piano and a drum were alike, Dixon said she had never heard of them, and then went on to talk about trombones indicating she knew they were musical instruments.[17]  The first examiner's opinion indicates the scores were invalid.

The second examiner also suspected exaggeration.[18]  The examiner reported that Dixon put forth very poor effort on intellectual testing.[19]  He explained that when shown a picture of a table missing a leg, Dixon said she didn't know what a table was, but correctly cited a door knob missing from a door.[20]  The examiner considered the test scores unreliable due to malingering.[21]  The second examiner's opinion also indicates the scores

---

[15]SSA record at pp. 170-71.

[16]*See id.* at p. 149 (IQ test scores at age 10, basic reading: 76, mathematics reasoning: 61, spelling: 71, reading comprehension: 76, numerical operations: 76, written expression: 68).

[17]*Id.* at p. 170.

[18]*Id.* at p. 544 (characterizing Dixon's presentation as "contrived and exaggerated").

[19]*Id.* at p. 542.

[20]*Id.*  The ALJ asked Dixon if she knew what a table is; Dixon responded "yes." *Id.* at p. 838.

[21]*Id.* at pp. 543-44.

4

were invalid.

The examiners' opinions served as an adequate basis for rejecting the test scores.[22]

Without valid scores, Dixon did not meet listing 12.05C.  Although a person's IQ is presumed stable over time,[23] Dixon's scores were lower than her scores as a child.  Dixon undermined the presumption by failing to do her best during IQ testing,[24] exaggerating her limitations,[25] and making inconsistent statements.[26]  The ALJ did not err.

---

[22]*Accord Clay v. Barnhart*, 417 F.3d 922, 931 (8th Cir. 2005) (explaining that a sufficient basis existed for rejecting IQ scores; "one was invalid by the tester's own admission, and the other was sufficiently suspect that the Commissioner was entitled to disregard it notwithstanding the tester's opinion that the scores were valid").

[23]*Muncy v. Apfel*, 247 F.3d 728, 734 (8th Cir. 2001) ("[A] a person's IQ is presumed to remain stable over time in the absence of any evidence of a change in a claimant's intellectual functioning.").

[24]SSA record at p. 170 ("She didn't appear to be doing her best in spite of frequent encouragement to do so and exaggeration is suspected. … Her test results were lower than her test results in the [childhood disability] records and the "mild" retardation range is probably a better estimate of her level of intellectual functioning.") & p. 542 (reporting that Dixon's scores were unreliable "due to her poor effort and attempt to present herself in a bad light").

[25]*See Jones v. Astrue*, 619 F.3d 963, 973-74 (8th Cir. 2010) (explaining that ALJ could discount credibility of allegations of mental impairment given psychiatrist's comments about exaggeration; *i.e.*, "It is difficult to evaluate her sincerity due to the disability application and her probable dramatic exaggeration of anxiety.").

[26]*Phillips v. Colvin*, No. 12-3265, 2013 WL 3822089, at *3 (8th Cir. July 25, 2013) (explaining in a case where the claimant was disabled due to mental retardation as a child, "Whether a claimant's condition has improved is primarily a question for the trier of fact, generally determined by assessing witnesses' credibility.") (to be published). *Compare* SSA record at p. 541 (reporting daily use of marijuana on May 21, 2009), *with id*. at p. 836 (testifying on Oct. 27, 2011 that she smoked marijuana once two or three years

**Available work**.  Dixon also contends the ALJ failed to show work existed that she can do because she maintains the hypothetical question did not include all of her impairments.[27]  "A hypothetical question … is sufficient if it sets forth impairments supported by substantial evidence in the record and accepted as true.  The hypothetical question must capture the concrete consequences of the claimant's deficiencies."[28]

The ALJ's hypothetical question flowed from a mental RFC assessment.  After reviewing childhood disability evidence and the first examiner's report,[29] three medical experts opined that Dixon can do basic work activities.[30]  The consultants determined Dixon can work where interpersonal contact is incidental to the work performed; the complexity of tasks is learned by rote, few variables, little judgment; and supervision required is simple, direct and concrete.  Although one of the experts reviewed the second

---

ago).  *Compare id*. at p. 168 (reporting on Jan. 10, 2007 that she was supposed to graduate from high school in May, but didn't return to school after being suspended in March), *with id*. at p. 243 (testifying on Dec. 4, 2008 that she didn't graduate from high school because she was in jail on graduation day) & *id*. at p. 540 (reporting on May 21, 2009 that she quit the 11th grade because they would not let me graduate).

[27]Docket entry # 13, pp. 19-21.

[28]*Perkins v. Astrue*, 648 F.3d 892, 901-02 (8th Cir. 2011) (internal quotations and citations omitted).

[29]SSA record at p. 194-95 (medical consultant case worksheet summarizing child medical evidence and the first psychological examiner's findings).

[30]*Id*. at p. 178 (initial assessment on Feb. 26, 2007; assessment affirmed on Feb. 26, 2007) & p. 196 (assessment agreed with on Mar. 22, 2007).

examiner's report and opined that Dixon had no significant mental impairment,[31] a reasonable mind would accept the initial assessment as adequate to capture the concrete consequences of Dixon's impairments.   Thus, substantial evidence supports the hypothetical question.

To the extent Dixon complains about the omission of particular examiner findings, an ALJ need not "use specific diagnostic or symptomatic terms where other descriptive terms can adequately define the claimant's impairments."[32]   The hypothetical question captured the concrete consequences of Dixon's impairments.   The vocational expert responded to the hypothetical question and identified available  work.[33]   A vocational expert's testimony answering a properly phrased hypothetical question constitutes substantial evidence.[34]   Thus, the ALJ's decision is supported by substantial evidence.

**Conclusion**.  Substantial evidence supports the Commissioner's decision.  The ALJ made no error of law.  For these reasons, the court DENIES the request for relief (docket

---

[31]*Id*. at p. 557 (observing that second examiner reported malingering and daily cannabis abuse and classifying the case as non-severe).

[32]*Roe v. Chater*, 92 F.3d 672, 676 (8th Cir. 1996).

[33]SSA record at p. 840-41 (identifying kitchen helper, laundry worker, and cafeteria attendant as available jobs).

[34]*Hulsey v. Astrue*, 622 F.3d 917, 922 (8th Cir. 2010) ("A vocational expert's testimony constitutes substantial evidence when it is based on a hypothetical that accounts for all of the claimant's proven impairments.").  *Accord Partee v. Astrue*, 638 F.3d 860, 865 (8th Cir. 2011).

entry # 2) and AFFIRMS the decision denying Dixon's applications.

It is so ordered this 6th day of August, 2013.

_____
United States Magistrate Judge